UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
                                )   2:19-CR-19-1D
            vs.                 )
                                )
TOBY PAINTER,                   )
            Defendant.          )
_____)
```

DECEMBER 22, 2020
SENTENCING HEARING
BEFORE THE HONORABLE JAMES C. DEVER III
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

JAKE PUGH, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601

On Behalf of the Defendant:

KATHERINE SHEA, FEDERAL PUBLIC DEFENDER
Federal Public Defender's Office
150 Fayetteville Street, Suite 450
Raleigh, North Carolina  27601

AMY M. CONDON, CRR, RPR, CSR
Official Court Reporter
United States District Court
Raleigh, North Carolina
Stenotype with computer-aided transcription

1      (Tuesday, December 22, 2020, commencing at 3:40 p.m.)

2                   P R O C E E D I N G S

3          THE COURT:  We'll next take up the sentencing of

4    Toby Painter.

5        (Pause in the proceeding.)

6          THE COURT:  Ms. Shea, are you and Mr. Painter ready

7    to proceed?

8              MS. SHEA:  We are.

9          THE COURT:  Mr. Pugh, is the Government ready?

10         MR. PUGH:  Yes, Your Honor.

11         THE COURT:  At this time I'd ask that Mr. Painter be

12   sworn or affirmed.

13       (The defendant, Toby Painter, was duly sworn.)

14         THE COURT:  Mr. Painter, do you understand that

15   having been sworn, that your answers to my questions are

16   subject to the penalty of perjury; and if you were to lie to

17   me, you could be prosecuted for perjury or for making a false

18   statement, sir?

19             THE DEFENDANT:  Yes, sir.

20         THE COURT:  Have you taken any kind of medicine or

21   any other substance in the last 48 hours that would affect

22   your ability to hear and understand this proceeding?

23             THE DEFENDANT:  No, sir.

24         THE COURT:  Do you know why you're here today?

25             THE DEFENDANT:  Yes, sir.

1          THE COURT:  Ms. Shea, do you have any reason to

2    doubt Mr. Painter's competence to go forward today?

3          MS. SHEA:  No, Your Honor.

4          THE COURT:  Does the Government have any reason to

5    doubt Mr. Painter's competence to go forward today?

6          MR. PUGH:  No, Your Honor.

7          THE COURT:  Based on Mr. Painter's answers to my

8    questions, my observations of Mr. Painter and the answers from

9    counsel, I find that he is competent.

10         Mr. Painter, you're here today, having entered a

11   plea of guilty pursuant to a plea agreement of the charge of

12   enticement of a minor.  I formally accept the plea agreement.

13         The sentencing guidelines are no longer mandatory;

14   they're advisory.

15         Nevertheless, I'm to take into account the

16   now-advisory guidelines.  I do this by initially making

17   findings of fact and calculating an advisory guideline range.

18   I'll then consider any motion that might be made that might

19   move that range either up or down.  I'll then consider all

20   arguments that your lawyer makes on your behalf, any statement

21   you'd like to make, any victim allocution and the arguments of

22   the Assistant United States Attorney.  I'll then determine

23   your sentence, and I'll announce it here in court today.

24   That'll be the process we'll follow.

25         Ms. Shea, did you receive a copy of the presentence

```
 1  report?

 2          MS. SHEA:  We did.

 3          THE COURT:  Mr. Painter, did you talk with your

 4  lawyer, Ms. Shea, about the presentence report?

 5          THE DEFENDANT:  Yes, sir.

 6          THE COURT:  At this time the Court directs that the

 7  presentence report be placed in the record under seal.

 8          In accordance with Rule 32 of the Federal Rules of

 9  Criminal Procedure, the Court accepts as accurate the

10  presentence report, except as to matters in dispute as set

11  forth in the addendum.

12          I have reviewed the entire report, including the

13  addendum.  The addendum does contain some objections, the

14  first of which doesn't appear to affect the advisory guideline

15  range.  The second two, the Government appears to have

16  conceded those or something in their 5K; is that correct?

17          MR. PUGH:  Yes, Your Honor.

18          THE COURT:  So are there any other objections?

19          MS. SHEA:  No, Your Honor.

20          THE COURT:  No other objections from the --

21          MR. PUGH:  No other objections.

22          THE COURT:  So for purposes of the guideline

23  calculation, then, the Government is saying that paragraph 48

24  should be zero?

25          MR. PUGH:  That is correct.
```

1          THE COURT:  Paragraph 49, are you saying that should

2    be zero?

3          MR. PUGH:  47 and 48.

4          THE COURT:  47 and 48.

5          So then 53 becomes 36; 54 becomes 41; and 57 becomes

6    39?  Is that what your position is?  And it's a 39 and a III?

7          MR. PUGH:  I believe it would have lowered it by

8    four levels to 38.

9          THE COURT:  38.  So 53 is 34 -- excuse me.  53 is

10   34; 54 is 39 --

11         MR. PUGH:  By my calculation, defense and I have

12   agreed that four-level enhancements don't apply, which would

13   make 53 36; paragraph 54 would be 41; and then after three

14   levels are removed, then it would be 38 is the total offense

15   level.

16         THE COURT:  Ms. Shea?

17         MS. SHEA:  Your Honor, that's what we believe that

18   is the proper guideline range.  A 38, III.

19      (Pause in the proceeding.)

20         THE COURT:  All right.  Paragraph 47 becomes zero,

21   paragraph 48 becomes zero, paragraph 49 remains two,

22   paragraph 53 is 36, paragraph 54 adds five to 41, minus three

23   is 38.  38 and a III is 292 to 365.

24         Any objection to that advisory guideline range from

25   the Government?

```
1              MR. PUGH:  No, Your Honor.
2              THE COURT:  Any objection from the defense?
3              MS. SHEA:  No, Your Honor.
4              THE COURT:  I'll hear first on the 5K from Mr. Pugh.
5              MR. PUGH:  Yes, Your Honor.
6              Mr. Painter signed a cooperation plea agreement.  He
7    participated in a two-hour debrief with FBI and local law
8    enforcement as I set forth in our motion.  He gave extensive
9    information about Plymouth, North Carolina, where he's from,
10   in particular drug trafficking in that area as well as gang
11   activity.  Law enforcement have since been able to corroborate
12   a large amount of what Mr. Painter said.
13             While it is historical information, I spoke with the
14   FBI, and they said they have already planned to begin an
15   investigation based on that information.  They have assigned
16   an agent, and essentially Mr. Painter's debrief is going to be
17   the first report in that investigation.  It is obviously at
18   early stages, but they believe that that will result in
19   charges down the road.
20             Mr. Painter's information is essentially the
21   foundation of those charges.
22             THE COURT:  I will grant the Government's motion and
23   will give Mr. Painter credit for the substantial assistance
24   that he did provide to the United States.
25             At this time I'll hear from Ms. Shea on the 3553(a)
```

1  factors.

2           MS. SHEA:  Thank you, Your Honor.

3           We are asking you to consider a sentence of less

4  than what the Government is recommending, Your Honor.  And we

5  believe that it's supported by all of the 3553(a) factors.

6           Your Honor, in terms of the history and

7  characteristics of my client, Mr. Painter stands before you.

8  Today he's 32 years old.  At the time of this offense, he was

9  29 years old.  He grew up in the Plymouth, North Carolina

10 area.  His parents split when he was a toddler.  He grew up

11 primarily with his mother.  His family was not wealthy by any

12 means, Your Honor, but did grow up in a good home.

13          His mother is supportive of him.  They talk

14 regularly at the jail.  She was not able to be here today,

15 Your Honor, but she does remain supportive.  She presently

16 works as a home health worker.

17          Mr. Painter has never been married, Your Honor, but

18 he was in a long-term relationship with a woman.  They had two

19 sons together.  His older son is now seven years old.  They

20 have split up.  And since this offense, Your Honor,

21 Mr. Painter has not been in communication with his son.  He

22 understands his mother's -- the mother's decision not to have

23 him be in contact, but he is very saddened by that and greatly

24 regrets that his actions have led to his absence in his son's

25 life.

1        They did have a second child together, Your Honor,

2   his -- it was a second son named Taleck, who died at two

3   months old from SIDS.  Mr. Painter was the person who found

4   his son unresponsive; and that's, of course, something that

5   he -- you know, you never really move on from that, Your

6   Honor.  It's something that he will carry with him forever.

7        In terms of his history and characteristics, Your

8   Honor, we do acknowledge that he does have other convictions.

9        His common law robbery, Your Honor, is from over a

10  decade ago when he was 21 years old.  No violent convictions

11  since then.  We believe that his record is taken into account

12  with the guideline range.

13       Your Honor, I can tell you that he's very remorseful

14  about the harm that he's caused the victim.  I wanted to let

15  you know, Your Honor, that we did hire a local psychologist to

16  evaluate Mr. Painter who specializes in the evaluation and

17  treatment of sex offenders named Dr. Keith Hersh, and he

18  authored just a page and a half about him.  I'm happy to pass

19  it up to Your Honor, if I may.

20       THE COURT:  You may.

21       MS. SHEA:  And what I want to highlight about that,

22  so Mr. -- Dr. Hersh interviewed Mr. Painter over many hours.

23  He administered tests that I'm sure Your Honor is familiar

24  with:  The personality assessment inventory, the multiphasic

25  sex inventory.  And I think notably is -- what we believe is

notable, Your Honor, is that he finds that Mr. Painter does not suffer from a paraphilic disorder, which is notable, we believe, because Mr. Painter is not someone that is motivated to commit sex crimes by an underlying sexual deviance.

He also found that Mr. Painter is a good candidate for treatment and is likely to respond well. He noted that Mr. Painter has good verbal skills. He's intelligent. He expresses an interest in mental health treatment. He does find that he is antisocial, Your Honor, which we concede by his record, but we also note that antisocial features decrease with age.

In terms of the nature and circumstances of this offense, Your Honor, I understand that this is not a good crime, Your Honor, and I understand that. And we understand that the sentence that the Court imposes today is going to be a lengthy and serious punishment. We are asking you to consider a sentence of between 10 and 15 years, and we believe that the nature and circumstances of the offense support that sentence.

There are a couple of important aspects of this offense that we want to point out. First is the short duration. So this happens over about a month-long period from about Christmas 2017 to January 2018. And in doing this, Your Honor -- I'm not trying to minimize what he did, Your Honor. And again, I understand this is a bad crime, but I do think

it's important to put it in context and to compare it to other

people who are charged with similar -- with a similar crime.

The second aspect that we want to point out, Your

Honor, is that it's an isolated sexual crime.  So he does this

when he's 29 years old.  There's absolutely no evidence that

he did this before.  And then notably, he was not arrested for

two years, Your Honor, after this happens, and he doesn't do

anything like this after.  And at the time that he is

communicating with this girl, Your Honor, she is the only

minor that he is in communication with.

I think all of those things do make this case

different than other cases that fall under this statute, Your

Honor.  All of his electronics were searched top to bottom

when he was arrested two years later.  The phone that actually

was involved in this offense was not -- he did not -- no

longer had that particular phone, but the phone that he did

have showed no evidence of new activity.

Third, we want to point out that he did not

distribute this widely.  He did not upload this to the

internet.  He didn't share.  He didn't threaten to share.  And

he did cooperate with law enforcement, which we think is

important.

Your Honor, I think that, you know, the guidelines

in this case are very high.  292 to 327 months is a very high

guideline range.  And over the course of the last few days,

I've been looking at other cases in front of Your Honor that had -- that were manufacturing child pornography cases. That's the guideline that this case falls under.

He's pled to enticement, but the guideline is this manufacturing child pornography. And some of the fact scenarios in the cases that have been before Your Honor, you know, are some of the worst fact scenarios that probably come before this Court.

Looking at some of the other ones, Your Honor, I mean, I know that you probably -- I would imagine that these probably all come to your mind very readily. Albritton, who molested a three year old, got 360 months. Ensenat, who videoed himself having sex with a 10 year old got 390 months. Pildred (phonetic) took photos of a sex act with a one year old, got 360 months. Daniels molested his 13-year-old stepdaughter for years, took videos, distributed widely, got 360 months. Dennis Johnson had step-children acting out things together, distributed widely, got 360 months. Some of the worst of the worst fact patterns. And by no means am I saying that his fact pattern is not also bad, but I think -- I think that it is important to put it on a spectrum, Your Honor. I think that the guidelines may be overly punitive in this case. And our different -- this conduct is different than the kind that I think are more deserving of super serious, lengthy punishments.

1    I would ask you to look very carefully at the

2  pattern enhancements, Your Honor.  I agree that by the

3  language of the guidelines that it applies because he had the

4  victim send multiple photos to him.  I agree that the language

5  of the guidelines say that it should apply.  But I would ask

6  you to consider the background section of that enhancement,

7  which says that it applies to offenders who present a

8  continuing danger to the public and also to ensure lengthy

9  incarceration for offenders who engage in a pattern of

10 activity involving the sexual abuse or exploitation of minors.

11 And so I think that his conduct, while it does technically

12 qualify, I think that, you know, a five-level enhancement,

13 Your Honor, I mean, we're talking about increasing him from

14 168 months, which is 14 years, up to 292 because multiple

15 photos were produced.

16    And I think that that -- that is a really enormous

17 increase, Your Honor, and I would ask that you look carefully

18 at that and decide whether or not that full increase is

19 warranted.

20    One, I think that he is different from other people

21 who are motivated by a sexual deviance.  I think that the

22 danger that he poses to commit another sex crime is lower

23 because of the absence of an underlying deviance.

24    And two, I think the pattern, at the very least, it

25 falls within the most narrow, you know, definition of pattern;

or, I guess, most expansive definition of pattern in that
there were not multiple victims.  This did not occur over a
lengthy period of time.  The same five levels would have
applied had there been multiple victims, had it occurred over
a two-year period.  And so we would ask you to consider
whether the full weight of that five-level enhancement is
warranted.  And we appreciate the Court's consideration.

THE COURT:  Thank you.

At this time I'll hear from Mr. Painter, if you'd
like to make a statement, sir.

THE DEFENDANT:  Yes, sir.  I'm not here, you know,
to try to place blame on anybody.  Like I take full
responsibility for what I did.  I know what I did.  Having
communications like this with an underage girl was wrong in
all means.  And I apologize for that, even to her and her
family, all this stress and pain I put them through.  I'm just
sorry for all of that.  I didn't mean to do any of it.

THE COURT:  Thank you.

I'll hear any victim allocution, and then I'll hear
from the United States.

MR. PUGH:  Yes, Your Honor.  The U.S. Attorney's
Office has been in contact with the victims.  They are not
participating in the sentencing and have made clear that they
just want to put this behind them.

This has been a traumatic event for the family, and

1  I believe once the victim realized what really happened here,
2  she's simply embarrassed.

3          Turning to the offense conduct, this is a 14 year
4  old who wasn't even in high school yet.  This is a girl who
5  was still in middle school.  And it was the middle school
6  guidance counselor that helped bring this to everyone's
7  attention.  In the course of the chats, she references going
8  to talk to her mom, watching a scary movie, discussing with
9  her friends Mr. Painter's age.  It was abundantly clear how
10 old this girl was.

11          Mr. Painter might have, on some level, thought he
12 was in a relationship, but really that's willful blindness.
13 It's evident from the chats that he knew what he was doing was
14 wrong; the discussions about if they find out, they'll lock me
15 up and the other discussions about the age.  This was a child
16 that he was taking advantage of.  This was far, far from a
17 relationship.

18          I will acknowledge that this was an isolated
19 incident as far as we know; however, I will push back on the
20 idea that this was a short timeframe.  This ended because the
21 mother found out about these chats and these photos I believe
22 on January 21st, and the chat history as set forth in the PSR
23 has photos exchanged right up to that date.

24          I've already spoke about Mr. Painter's cooperation.
25 Taking that into account, we are asking for the 219 months

1  that I set forth in that motion.

2          THE COURT:  Thank you.

3          Anything else, Ms. Shea?

4          MS. SHEA:  No, Your Honor.  Thank you.

5      (Pause in the proceeding.)

6          MS. SHEA:  I'm sorry, Your Honor.  Can I say one

7  more thing?

8          THE COURT:  Yes.

9          MS. SHEA:  One case that I did find that was

10 sentenced before Your Honor that had the most similar facts

11 was a case called *United States versus Sean Dixon*.  In that

12 case, the defendant communicated with a 12 year old online,

13 and they exchanged sexual photos.  Similarly, he was charged

14 with manufacturing, but it was dismissed, and he was allowed

15 to plead to enticement.

16          I will concede that Mr. Dixon had more mitigating

17 factors than Mr. Painter.  He had no record, and he was in the

18 military.  For some reason, the guidelines in that case did

19 not cross reference to manufacturing child pornography.  I

20 don't understand why not.  It seems like it would have.  But

21 he was sentenced to 126 months, which was a guideline

22 sentence.

23          And I would ask you to consider just the nature of

24 the conduct here and the need to avoid unwarranted sentencing

25 disparities as another basis in addition to the collateral

consequences that he will face as a result of the sex offender
conviction.

       THE COURT:  Thank you.

   (Pause in the proceeding.)

       THE COURT:  Mr. Painter, the Court recognizes its
obligation to impose a sentence sufficient but not greater
than necessary to comply with the purposes set forth in the
statute.

       I have considered all arguments that your lawyer has
made.  I have considered your statement.  I have considered
the position of the United States.  I have considered the
advisory guideline range.

       Among other things, I'm to consider -- I've also
considered the Government's motion under Section 5K1.1, which
I've granted.

       Among other things, I'm to consider the nature and
circumstances of the offense and the history and
characteristics of the defendant; the need for the sentence
imposed to reflect the seriousness of the offense, to promote
respect for the law and to provide just punishment; the need
for the sentence imposed to deter others who might choose to
engage in the criminal behavior that brings you here; the need
for the sentence imposed to protect the public from further
crime by you; the need for the sentence imposed to provide you
with needed educational or vocational training, medical care

1  or other correctional treatment in the most effective manner.

2       The statute lists numerous other factors.  I've

3  considered all those factors, although I won't mention each

4  one individually.

5       As for the nature and circumstances of the offense,

6  you did plead guilty to enticement of a minor.  The offense

7  conduct is described in the PSR in paragraphs 7 through 12.

8  On January 22nd, 2018, the mother of a 14-year-old child

9  attending middle school in Ohio was notified by a guidance

10 counselor at that middle school that her child was talking to

11 an older man, identified later as you, and that you had

12 exchanged nude pictures with each other.

13      The report then recounts your online communications

14 with this child that began in December of 2017.  Conversations

15 then became sexual.  You had the child send you a variety of

16 nude photographs and engaged in sexually explicit

17 conversations with the child.  You encouraged her to send

18 those photos of herself and asked her to do things to her body

19 on those photographs.  According to paragraph 8, the child

20 told you she was 14 years old.  You told her you were 29.

21      The only reason you stopped is because you got

22 caught.  I don't consider this to be a brief aberration.  I

23 think it's egregious conduct by you directed at a child.

24 You're an adult man, and you exploited this child, and you did

25 it for your own gratification.  And it's terrible, and you

1  should be punished for it, and you will be punished for it.

2          I've taken into account every argument made.  I

3  remember all of those cases.  All of them are horrific.  I do

4  not think you're similarly situated with Sean Dixon.

5          As for your history and characteristics beyond this

6  criminal behavior directed at this child, you have a GED.

7  You're 32 years old.  You have a criminal history category of

8  III.  You have a conviction for assault on a female at age 20,

9  paragraph 17.  Common law robbery in paragraph 18.  Attempting

10  to obtain money by false pretenses in paragraph 20.

11          I've taken into account all the arguments associated

12  with the assessment.  I understand you do not have a

13  paraphilia or paraphilic interest in children.  That doesn't

14  change what you did to this child.  Her life has changed

15  forever because of you and how you exploited her.

16          I do not think the sentence suggested by your

17  counsel would remotely be sufficient to provide just

18  punishment or to incapacitate you or to generally deter others

19  who might think that this is behavior that is acceptable in

20  this society.  It is not.  It cannot be.  It is a serious

21  crime that warrants serious punishment.  I do not think the

22  Government's recommendation is sufficient.

23          I've taken into account your cooperation and

24  substantial assistance, but the serious nature of this

25  criminal behavior that only stopped because you got caught is

conduct that warrants serious punishment, and you will receive serious punishment.

I've considered the argument about the pattern enhancement and the background commentary. I think it applies appropriately in this case. I don't think it overstates. I think the guidelines provide bad advice in terms of a starting point to then work down based on the substantial assistance and then to work back up to account for the serious nature of this criminal behavior, the need to incapacitate this defendant, the need to punish this defendant justly, the need to deter others who might think that exploiting a child in this way is somehow acceptable or won't result in a serious punishment. It will and should. This little girl was in middle school. And you exploited her. In a terrible way.

Having fully considered the entire record in this case, the need to punish this defendant justly, taking into account his history and characteristics, extremely serious nature of this criminal behavior, the need to incapacitate him, the need to avoid unwarranted sentencing disparities, taking into account his substantial assistance, taking into account his entire family history and all the arguments his counsel made, it's the judgment of the Court that Toby Painter is hereby committed to the custody of the Bureau of Prisons to be imprisoned for 240 months. Pursuant to the plea agreement, Counts 1, 2, 3, and 4 are dismissed.

1    Upon release, you'll be placed on supervised release

2  for 15 years.  After carefully considering the 3583(d) factors

3  and the 3553(a) factors, you'll comply with the mandatory and

4  standard conditions of supervision as adopted in the Eastern

5  District of North Carolina and comply with the following

6  additional conditions:

7    In light of the reports, indication of your

8  substance abuse history, particularly as it relates to

9  marijuana, you'll participate in a program approved by

10  Probation for the treatment of narcotic addiction.  You'll

11  participate in a mental health treatment program in light of

12  the issues associated with your mental health that are

13  reflected in the report and reflected in the exhibit your

14  lawyer handed up.  You'll consent to a warrantless search by

15  Probation or at the request of the probation officer or any

16  other law enforcement officer of your person and premises,

17  including any vehicle, to determine compliance with the

18  conditions of this judgment.  You'll cooperate in the

19  collection of DNA.  You'll have no contact, direct or

20  indirect, with the victim of this criminal behavior that you

21  engaged in unless provided with specific written authorization

22  in advance by the U.S. probation officer.  You'll submit to

23  psychosexual evaluation by a qualified mental health

24  professional experienced in evaluating sexual offenders.

25  You'll participate in a sex offender treatment program as

directed by Probation and comply with any rules of such

treatment program.  You'll take any medication that's

prescribed as part of that program by a qualified physician.

At the direction of Probation, you'll submit to physiological

testing, which may include polygraph examinations or other

tests to monitor your compliance with probation or supervised

release conditions.

Your residence and employment shall be approved by

Probation.  Any proposed change in residence are one that must

be provided to a probation officer at least 10 days before the

change and preapproved before a change may take place.  You

shall not possess materials depicting or describing child

pornography or simulated child pornography as defined in 18

U.S.C., Section 2256.

You shall comply with the requirements of the Sex

Offender Notification and Registration Act as directed by

Probation, Bureau of Prisons, or any state or travel

government, sex offender registration agency in a state where

you reside, work or a student or convicted of a qualifying

crime.  You shall not use, purchase, procure or otherwise

obtain a computer or electronic device that can be linked to a

computer network, internet service provider or exchange format

involving computers unless approved by Probation.

To make sure of compliance, you shall submit to

unannounced searches of the computer or computer equipment,

including mobile phones, at the discretion of the probation

officer. Given how you committed this crime, this is an

appropriate condition.

At the direction of Probation, you'll consent to the

installation of systems or software that will allow Probation

or a designee to monitor computer use or any computer that you

own or are authorized to use. You'll pay the cost of that

monitoring. You shall not use, possess or control any

computer-based counter-forensic tools. You shall not use or

have installed any programs specifically and solely designed

to encrypt data, files, folders or volumes, and any media

shall, upon request, immediately provide probation officer

with any and all passwords required to access data, compressed

or encrypted for storage, by any such software in light of how

you committed this crime.

You shall support your child. You shall pay a

special assessment of $100. Because you do not have the

ability to pay an assessment, under the Justice for Victims of

Trafficking Act of 2015, I'm not going to impose that.

So there is no request for restitution, Mr. Pugh?

MR. PUGH: That's correct.

THE COURT: I'm not going to impose a fine. After

you pay your special assessment, any money you earn will go to

support your child.

I do think I've properly calculated the advisory

guideline range, but I announce pursuant to *U.S. v.*
*Gomez-Jimenez,* 750 F.3d 370 (4th Cir. 2014) and *U.S. v.*
*Hargrove,* 701 F.3d 156 (4th Cir. 2012), that I'd impose the
same sentence as an alternative variant sentence if I have in
any way miscalculated the advisory guideline range.  This is
the sentence sufficient but not greater than necessary for
Mr. Painter in light of all the 3553(a) factors that I've
discussed.

In imposing this sentence, I've carefully considered
each word each counsel has said to me in connection with this
case and all the written materials in the record.  Simply
because I have not parroted back each word does not mean I
have not considered it to the extent my sentence is
inconsistent with any sentence requested by either counsel.
It is because I have rejected their requests as inconsistent
with the 3553(a) factors as I have balanced them and
articulated them in this case.

Mr. Painter, you can appeal your conviction if you
believe that your guilty plea was somehow unlawful or
involuntary or if there's some other fundamental defect in the
proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal your
sentence under certain circumstances, particularly if you
think your sentence is contrary to law.

However, you did enter into a plea agreement that

contains an appellate waiver.  In light of your sentence, I believe you've waived your right to appeal your sentence.

If you believe the waiver is unenforceable or inapplicable for any reason, you can present that theory to the Appellate Court.

With few exceptions, any Notice of Appeal must be filed within 14 days of the judgment being entered on the docket in your case.

If you're unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.

If you so request, the Clerk of Court will prepare and file a Notice of Appeal on your behalf.

Did you want to recommend a facility, Ms. Shea?

MS. SHEA:  Yes, Your Honor.  If you would consider recommending Butner.

THE COURT:  I will recommend FCI Butner so that Mr. Painter's mother can continue to be a part of his life.

Anything else from the Government?

MR. PUGH:  No, Your Honor.

THE COURT:  Did you want me to make any other recommendations?

MS. SHEA:  No, Your Honor.

We note our objection to the one condition, Your Honor, about physiological testing, including polygraphs.

THE COURT:  I think that that is an appropriate

condition in light of Mr. Painter's offense conduct in this
case as a safeguard associated with protecting society.  So
your objection is noted.

        MS. SHEA:  Thank you, Your Honor.

        THE COURT:  He'll be remanded.

                *     *     *

        (The proceedings concluded at 4:21 p.m.)

1                    UNITED STATE DISTRICT COURT

2                  EASTERN DISTRICT OF NORTH CAROLINA

3

4

5                    CERTIFICATE OF OFFICIAL REPORTER

6

7              I, Amy M. Condon, CRR, RPR, CSR, Federal Official

8    Court Reporter, in and for the United States District Court

9    for the Eastern District of North Carolina, do hereby certify

10   that pursuant to Section 753, Title 28, United States Code,

11   that the foregoing is a true and correct transcript of the

12   stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is

14   in conformance with the regulations of the Judicial Conference

15   of the United States.

16

17

18   Dated this 26th day of February, 2021.

19

20                                 _____
                                   /s/ Amy M. Condon
21                                 Amy M. Condon, CRR, CSR, RPR
                                   U.S. Official Court Reporter
22

23

24

25